UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ESTATE OF REDDIE ALEXANDER
By and through Willie Alexander, representative                      PLAINTIFF

  VERSUS                                    CIVIL ACTION NO. 3:15cv293-TSL-RHW

DLJ MORTGAGE CAPITAL, INC. et al                            DEFENDANTS

### **PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Before the Court is Plaintiff Willie Alexander's motion for relief from verbal settlement

agreement and Defendants' motion to enforce settlement agreement and for sanctions.  Doc. [83]

& [88].  On April 17 and 18, 2017, Plaintiff and Defendants participated in a settlement

conference before the undersigned.  *See* Minute Entry (4/17/2017 & 4/18/2017); Doc. [88-1] &

[88-2].  Both parties were represented by counsel at the conference.  *Id.*  The parties agreed to

settle the claims and counterclaims, with the terms transcribed by court reporter.  The essential

terms of the settlement, as read into the record, were as follows:

- Defendants pay to Plaintiff $12,500 in two payments of $6,250—the first

  payment after settlement documents are executed and the second payment after

  the subject property is vacated.

- Plaintiff will execute a deed in lieu of foreclosure on behalf of the Estate of

  Reddie Alexander in favor of Defendant DLJ Mortgage.

- Plaintiff and his wife will execute a quitclaim deed to Defendant DLJ Mortgage.

- Plaintiff and his wife will execute a full and complete release of Defendants.

- Plaintiff and his wife agree to vacate the premises on or before June 16, 2017, and leave the house in a broom-swept condition and leave all fixtures and appliances other than the washer, dryer and refrigerator.

- Plaintiff agrees to dismiss the current lawsuit and all claims in Chancery Court regarding the subject property.

Doc. [88-1] at 2-7. On the first day of the settlement conference, Plaintiff indicated that he wanted to talk to his wife about the settlement and requested a one or two-day right to rescind. Doc. [88-1] at 6. Eventually, the Court agreed to reconvene the settlement conference to the following day, April 18th, to allow Plaintiff the opportunity to discuss the settlement with his wife. *Id.* at 7-8. On the following day, Plaintiff and his attorney, S. Craig Panter, indicated that they agreed to the terms of the settlement. Doc. [88-2]. Plaintiff represented to the Court that his wife agreed to execute a quitclaim deed and a release. *Id.* at 3.

Within three days of the settlement conference, Plaintiff dismissed Mr. Panter as his attorney. *See* Doc. [77]. Accordingly, the Court granted Mr. Panter's motion to withdraw as counsel for Plaintiff. Doc. [78]. Approximately one month after the settlement conference, Plaintiff filed a *pro se* motion for recusal of the undersigned. Doc. [79]. The undersigned denied Plaintiff's motion. Doc. [95]. In the interim, Plaintiff filed his motion for relief from the settlement agreement, as well as a motion to amend the case management order. Doc. [81] & [83].

In the motion for relief and in response to Defendants' motion to enforce, Plaintiff makes the following arguments: (1) Mr. Panter represented Plaintiff in a manner inconsistent with Plaintiff's instructions; (2) Defendants unilaterally changed the terms of the settlement agreement by offering to pay only $10,000, instead of the agreed upon $12,500; (3) Plaintiff's

wife is not a party to the lawsuit and declines to sign documents; (4) Defendants unilaterally changed the agreement with respect to household appliances; and (5) Plaintiff did not agree to a move out date of June 16, 2017.

Federal courts have the inherent power to enforce a settlement of litigation before it. *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986). This case is before the undersigned on the basis of diversity jurisdiction; therefore, the Court will apply Mississippi law of contracts. *See Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987); *The Stellar Group v. Pilgrim's Pride Corporation*, No. 3:06-cv-186-WHB-LRA, 2007 WL 955293, at *3 (S.D.Miss. Mar. 28, 2007). "It is elementary that when two parties come to a meeting of the minds, announce to the trial court that an agreement or settlement has been reached, and then recite the details of that agreement to the court on record, a settlement has been formed." *Carroll v. Henry*, 798 So.2d 560, 561 (Miss.Ct.App. 2001). Settlement agreements are strongly favored. *Chantey Music Publishing, Inc. v. Malaco, Inc.*, 915 So.2d 1052, 1055 (Miss. 2005). However, settlement agreements are enforced as a matter of contract law and "[c]ourts will not rewrite them to satisfy the desires of either party." *Id.* at 1056. Any additional terms in the settlement agreement or terms inconsistent with the agreement in the record are not material to the agreement and are unenforceable. *See Williams v. Winona Manor Healthcare, LLC*, No. 4:13CV225-SAA, 2014 WL 5090620, at *4 (N.D.Miss. Oct. 9, 2014).

**Plaintiff's Counsel**

Plaintiff argues in conclusory fashion that Mr. Panter did not follow his instructions. Plaintiff's protestations notwithstanding, the transcript reflects that Plaintiff was present when the terms of the settlement agreement were read into the record. He also indicated on the record that he understood and agreed to the terms. Plaintiff's later dissatisfaction with his attorney of

record does not relieve Plaintiff of his sworn statement agreeing to the terms of the settlement. *See Parmely v. 84 Lumber Co.*, 911 So.2d 569, 573 (Miss.Ct.App. 2005); *Carroll*, 798 So.2d at 561.

## Change in Payment Amount

Plaintiff argues that Defendants unilaterally changed the terms of the settlement when they presented him with a written agreement that changed the payment terms from those agreed upon at the settlement conference. In response Defendants assert that subsequent to the settlement conference, they discovered that Plaintiff had taken out a second mortgage in the amount of $110,000, but failed to advise them of this second mortgage. Thus, in the first proposed written agreement, Defendants modified the terms of the settlement in two aspects: (1) Plaintiff would receive only $3,750 as his second payment to cover costs of foreclosure necessary to eliminate the second lien; and (2) Plaintiff would allow the foreclosure to go through without objection. *See* Doc. [88-4]. Plaintiff denies that a second mortgage exists and blames Defendants for not being aware of any other mortgages. He argues that this unilateral modification of the terms voids the agreement.

The parties agreed on the record to a settlement amount of $12,500 in two separate payments. Defendants are not entitled to any reduction of that settlement amount, because there has been no meeting of the minds regarding a reduction. Rather, Defendants are bound to the terms of the settlement. However, Plaintiff also is bound by the agreed terms of the settlement to accept $12,500 in consideration for vacating the property in question and signing a deed in lieu of foreclosure, quitclaim deed, and release. After Plaintiff objected to a reduction in the payment, Defendants indicated a willingness to pay the full agreed amount of $12,500, but Plaintiff apparently refused. Doc. [88-5]. The undersigned finds that the settlement agreement

should be enforced to the extent that the terms of the settlement agreement should reflect that Defendants are to pay Plaintiff $12,500, with one payment of $6,750 due upon execution of the settlement agreement and a second payment of $6,750 due upon Plaintiff vacating the property. The settlement should not include any reduction in the payment amounts. In fact, Defendants have submitted a proposed settlement agreement that conforms to the settlement reached at the settlement conference with respect to payments. *See* Doc. [88-6].

The proposed settlement also states that Plaintiff will not object to a foreclosure sale or seek to have the sale set aside. Although these precise terms were not recited at the settlement agreement, the undersigned finds that Plaintiff's agreement to vacate the property in exchange for cash and his agreement to sign a deed in lieu of foreclosure reflect Plaintiff's agreement to surrender the property to the Defendants. Moreover, by the terms of the settlement, Plaintiff explicitly agreed to dismiss the instant litigation. In the original complaint, Plaintiff alleged that as a consequence of their breach of contract, Defendants were foreclosing on the subject property. Doc. [1-1] at 5. Plaintiff later was granted leave to file an amended complaint. *See* Doc. [46]; Text Only Order (12/2/2017). The proposed amended complaint added several allegations regarding foreclosure. Doc. [41-1] at 6. Specifically, Plaintiff asserted a claim of "Unconscionable Contract Terms" and alleged that the contract provided impermissible means for Defendants to foreclose on the subject property. *Id.* at 10. By agreeing to dismiss the claims asserted in this lawsuit, Plaintiff effectively agreed not to object to foreclosure proceedings. Plaintiff's objection to foreclosure on the subject property served as one of the grounds for Plaintiff's federal lawsuit. The addition of language that Plaintiff will not object to foreclosure does not alter the essential terms of the settlement but rather reinforces those terms with respect to foreclosure proceedings referenced in Plaintiff's complaint. Accordingly, Plaintiff should be

compelled to execute a deed in lieu of foreclosure and to execute a settlement agreeing not to object to foreclosure on the property.

**Plaintiff's Wife**

Plaintiff argues that his wife is not a party to this lawsuit and that she cannot be compelled to sign a settlement agreement or deed in lieu of foreclosure. Plaintiff's wife did not participate personally in the settlement; however, at the conference, Defendants indicated that her execution of a quitclaim deed would be a condition of the settlement. Doc. [88-1] at 7. The Court continued the settlement conference to the next day so that Mr. Alexander could consult with his wife. *Id.* at 7-8. The next day Mr. Alexander affirmed on the record that his wife agreed to sign a quitclaim deed. Doc. [88-2] at 3. Mr. Alexander now argues that his wife declines to sign the quitclaim and settlement documents.

During the settlement hearing, Plaintiff's counsel advised that the requirement of Mrs. Alexander to sign a quitclaim deed "will be either a condition of settlement or the defendants can agree not to worry about it." Defense counsel indicated that "[a]t the moment, it is a condition of settlement." Doc. [88-1] at 6-7. However, Plaintiff's counsel responded "[y]ou would always have the right to waive it." *Id.* at 7. The undersigned agrees with Plaintiff that the settlement cannot be enforced against Mrs. Alexander. Nevertheless, as reflected in the settlement transcript, her execution of a quitclaim deed was understood to be subject to waiver by Defendants. Plaintiff's counsel represented to the Court that Mrs. Alexander was not a borrower or owner of the subject property. *Id.* at 8; Doc. [88-2] at 2. The fact that the settlement cannot be enforced against Mrs. Alexander does not change the fact that there was a meeting of the minds between Defendants and Plaintiff on the terms of the settlement. Plaintiff is a party to the lawsuit and was present at the settlement conference. He agreed to the terms of the settlement on

the record.  The settlement agreement should be enforced with respect to Plaintiff.  The fact that

his wife declines to sign documents related to the settlement does not void the settlement

between Plaintiff and Defendants.

**Appliances**

Plaintiff argues that Defendants changed the terms of the settlement with regard to which

appliances could be removed from the house.  Defendants concede that the first proposed,

written settlement agreement failed to reflect the agreement regarding appliances.  Defense

counsel indicates that he had not received a copy of the settlement transcript prior to drafting the

proposed settlement agreement and that the inconsistency was unintentional.  Defendants

nevertheless agree to allow Plaintiff to remove the washer, dryer, and refrigerator from the

premises.  This change is consistent with the settlement transcript, and it is reflected in the

second proposed settlement agreement.  Doc. [88-1] at 4; Doc. [88-6].  Plaintiff's argument

about the appliances does not serve as a basis for invalidating the settlement.

**Move Out Date**

Plaintiff argues that he did not agree to a move out date of June 16, 2017.  The settlement

transcript says otherwise.  In Plaintiff's presence, defense counsel stated that "Mr. Alexander and

his wife agree to vacate the premises on or before June 16th, 2017, and leave the house in a

broom-swept condition and leave all fixtures and appliances other than the washer, dryer and

refrigerator."  Doc. [88-1] at 3-4.  Plaintiff's assertion that he did not agree to the move out date

is disingenuous.  Even if Plaintiff somehow misunderstood this aspect of the agreement,

Defendants offered to extend the move out date.  Doc. [88-5].  This is further reflected in the

revised version of the proposed settlement agreement, which changed the move out date to

August 1, 2016.  Doc. [88-6].  As a result of the subsequent dispute over enforcing the

settlement, the June 16th date has come and gone.  Nevertheless, a change in move-out date does not alter the essential terms of the settlement.  Plaintiff has agreed to vacate the premises in exchange for $12,500.  The intention of the parties was to afford Plaintiff a reasonable period of time to vacate the premises, which was set at 60 days from the date of the settlement conference.  Plaintiff's alleged misunderstanding about the move out date does not provide a basis for invalidating the entire settlement agreement.   Rather, the settlement agreement should reflect a move out date 60 days from execution of the settlement agreement.

**Sanctions**

The undersigned recommends that Defendants' request for sanctions and/or attorneys' fees be denied at this time.  The current disagreement was created, in part, by defense counsel's post-settlement requests to change agreed terms of the settlement.  However, Plaintiff's post-settlement conduct has contributed significantly to the impasse as well.  The undersigned recommends that Defendants be permitted to re-urge the motion for sanctions if Plaintiff refuses to execute and abide by the term of the settlement agreement.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Plaintiff's [81] Motion for Relief from Verbal Settlement Agreement be DENIED and that Defendants' [88] Motion to Enforce Settlement Agreement be GRANTED and that Defendants' request for sanctions be DENIED at this time.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically

identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 28th day of August, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE